AYC
for McGrath
AUSA 5/3/19

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
MAY 10 2019
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  VMC  DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
)  Case No.   19MJ9448
Samsung Cellular Telephone )
Model: SM-J410G,  IMSI: 334090015385905 )
Assigned Cellular Number: 686-288-4832 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, incorporated by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 and 963 | Importation of controlled substances and conspiracy to do the same |

The application is based on these facts:
See Affidavit of HSI Special Agent Elisha S. Mejia, incorporated by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*
Special Agent Elisha S. Mejia
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/10/19

*Judge's signature*

City and state: El Centro, CA          HON. RUTH BERMUDEZ MONTENEGRO
                                        *Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> Samsung CELLULAR TELEPHONE
> Model: SM-J410G
> IMSI: 334090015385905
> (**Target Device**);

currently in the possession of the Department of Homeland Security, Homeland Security Investigations, which is located at 2051 North Waterman Avenue, El Centro CA 92243.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the **Target Device** described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Device** for evidence described below. The seizure and search of the **Target Device** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Device** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, from the time period beginning December 30, ~~2019~~ 2018 ɛm, up to and including March 30, 2019:

a. tending to indicate efforts to import cocaine, or some other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute cocaine or controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute cocaine or controlled substances within the United States;

c. tending to identify coconspirators, criminal associates, or others involved in importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute cocaine or controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute cocaine or controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>Samsung Cellular Telephone<br>Model: SM-J410G<br>IMSI: 334090015385905<br>Assigned Cellular Number: 686-288-4832 | **AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT** |

I, Elisha S. Mejia, a Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following electronic device:

   a. Samsung Cellular Telephone
      Model: SM-J410G
      IMSI: 334090015385905
      Assigned Cellular Number: 686-288-4832
      (**Target Device**);

as described in Attachment A, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952, 960, and 963, as further described in Attachment B. This search supports an investigation and prosecution of Sergio Pablo SANCHEZ-RAMOS for one or more of the crimes mentioned above. A factual explanation supporting probable cause follows.

2. The **Target Device** was seized on or about March 30, 2019 from SANCHEZ-RAMOS after he was arrested at the Calexico, California Commercial Cargo Facility driving a 2009 International semi-truck bearing California license plate 9F44789 hauling a trailer bearing California license plate 4EN2880. SANCHEZ-RAMOS was hauling five spools of steel cable. United States Customs and Border Protection Officers (CBPOs)

1

discovered 145.56 kilograms of cocaine hidden inside a non-factory compartment located in the center of one of the spools of steel cable. The **Target Device** is currently in the possession of the Department of Homeland Security, Homeland Security Investigations, which is located at 2051 North Waterman Avenue, El Centro CA 92243.

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon my experience and training and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from my personal investigation of this matter and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation. Instead, it contains only those facts necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5. I am a Special Agent (SA) with Homeland Security Investigations (HSI), and have been so employed since November of 2008. I am currently assigned to the Child Exploitation/Internet Crimes Against Children Task Force of the Office of the Assistant Special Agent in Charge, Calexico, California (ASAC Calexico). I have conducted multiple criminal investigations into violations of federal and state law including, but not limited to, contraband smuggling, narcotics trafficking, weapons violations, and organized criminal activity. During my career I have obtained experience and in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer crimes, computer evidence identification, child pornography identification, computer evidence seizure and processing, and various other criminal laws and procedures. I have personally participated in the execution of numerous search and seizure warrants.

6. Based on my training and experience as a law enforcement officer, I am familiar with the ways in which drug smugglers and traffickers conduct their business. Indeed, during the course of my duties I have (1) worked as a case agent, directing specific drug-related investigations; (2) worked as a surveillance agent who observed and recorded movements of individuals suspected of trafficking drugs; (3) participated in the execution of search warrants related to drug investigations; (4) initiated and executed numerous arrests for drug-related offenses, including possession with the intent to distribute; and (5) interviewed criminal defendants, witnesses, and informants in furtherance of investigations into the illegal smuggling and trafficking of controlled substances. Through these duties, I have gained a working knowledge and insight into the operational habits of drug smugglers and traffickers.

7. Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a. Drug smugglers and traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

b. Drug smugglers and traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

c. Drug smugglers and traffickers and their coconspirators will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

d. Drug smugglers and traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

e. Drug smugglers and traffickers will use cellular/mobile telephones to notify or warn their coconspirators of law enforcement activity to include the presence and posture of marked and unmarked units as well as the operational status of checkpoints and border crossings; and

3

  f. Drug smugglers and traffickers and their coconspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

8. Based upon my training and experience and consultations with law enforcement officers experienced in drug smuggling and trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating drug smuggling and trafficking conspiracies that searches of cellular/mobile telephones yields evidence:

  a. tending to indicate efforts to import cocaine, or some other controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute cocaine or controlled substances within the United States;

  b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute cocaine or controlled substances within the United States;

  c. tending to identify coconspirators, criminal associates, or others involved in importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute cocaine or controlled substances within the United States;

  d. tending to identify travel to or presence at locations involved in the importation of cocaine, or some other controlled substances from Mexico

4

           into the United States, or possession and/or transportation with the intent to distribute cocaine or controlled substances within the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

9.    Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone. In addition, recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device** that may identify other persons involved in narcotics trafficking activities. Accordingly, I believe that information relevant to the narcotics smuggling activities of SANCHEZ, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, and other digital information are also stored in the memory of the **Target Device**.

10.    Based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that drug conspiracies often require detailed and intricate planning to successfully evade detection. Consequently, drug conspiracies often involve planning and coordination for several months—this planning often occurs through mobile telephones. Additionally, based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that coconspirators are often unaware when a fellow coconspirator has been arrested and will attempt to communicate with that coconspirator via mobile telephone after his or her arrest to determine the whereabouts of

5

1  drugs that are being transported. Given those facts, I respectfully request permission to
2  search the Target Telephone for data beginning December 30, ~~2019~~, up to and including
3  March 30, 2019.  $2018$ ↙

## FACTS SUPPORTING PROBABLE CAUSE

11. According to reports prepared by CBPOs, on March 30, 2019, at approximately 1140 hours, SANCHEZ-RAMOS, a Mexican citizen, entered the United States through the Calexico, California Commercial Cargo Facility driving a 2009 International semi-truck bearing California license plate 9F44789 hauling a trailer bearing California license plate 4EN2880. CBPO E. Flores was assigned to entry lane #1, when SANCHEZ-RAMOS applied for entry. SANCHEZ-RAMOS presented his DSP-150 Border Crossing Card and E-Manifest trip# LEON-BBS00148652 / TRACTOR PLATE CA 9F44789 / TRAILER PLATE CA 4EN2880 / ENTRY NUMBER BBS00148652 with a commodity of steel cable. SANCHEZ-RAMOS said he was taking the commodity to Calexico, CA. CBPO E. Flores noticed the steel cable was being transported on the flat-bed trailer in wooden spools marked made in Mexico. The spools appeared to be very clean and new. Due to the appearance of the spools, CBPO E. Flores decided to refer SANCHEZ-RAMOS, the semi-truck, trailer, and commodity to the GANTRY x-ray system and then to the Vehicle and Cargo Inspection East.

12. According to his report, at approximately 1216 hours, CBPO J. Becerra, who was assigned to the GANTRY x-ray system, scanned the 2009 International semi-truck bearing California license plate 9F44789 hauling a trailer bearing California license plate 4EN2880. CBPO J. Becerra noticed anomalies in one of the rolls of steel cable that was on the trailer. CBPO J. Becerra notified the Supervisory CBPO and CBPO Y. Luna.

13. CBPO Y. Luna reported that at the dock of the Calexico, CA Commercial Cargo facility, she approached the semi-truck and SANCHEZ-RAMOS presented his DSP-150 Border Crossing Card # TJT001606990 and E-Manifest Trip# LEON-B8S00148652 TRACTOR PLATE CA-9F44789 /TRAILER PLATE CA- 4EN2880/ENTRY NUMBER 88S00148652 with a commodity of steel cable. As CBPO Y. Luna was escorting

6

SANCHEZ-RAMOS to the holding area, she took a second negative oral Customs declaration. SANCHEZ-RAMOS said he was going to a warehouse in Calexico, CA. CBPO Y. Luna asked Canine Enforcement Officer (CEO) C. Anzaldo along with his assigned Human and Narcotic Detector Dog (HNDD), "Zetta", (#141348) screen the semi-truck and trailer. "Zetta" alerted to the presence of the odor of narcotics emanating from the center of the third spool of steel cable. CBPO J. Becerra drilled into the spool and a white substance was produced.

14. CBPO's Y. Luna and J. Becerra proceeded to unroll the spool of steel cable. After the steel cable was separated from the spool, a steel non-factory compartment was discovered in the middle of the spool. After cutting open the compartment, 122 square bricks wrapped in plastic were found inside the non-factory compartment. The bricks were tested with the GEMINI (an electronic narcotics detection device) which identified the substance as cocaine. The total weight of the 122 packages was 145.56 kilograms (320.23 pounds). Several items were seized from SANCHEZ-RAMOS by CBPOs including the **Target Device**.

15. HSI Special Agent H. Grajeda and I were contacted following the discovery of the cocaine to conduct further investigation and to interview SANCHEZ-RAMOS. At approximately 7:25 p.m., Special Agent H. Grajeda and I identified ourselves to SANCHEZ-RAMOS. He was advised of his Constitutional rights per Miranda. He stated he understood his rights and freely waved them and subsequently signed the Miranda waiver form. Special Agent H. Grajeda and I then conducted a recorded interview of SANCHEZ-RAMOS. In post Miranda statements, SANCHEZ-RAMOS admitted that **Target Device** was his cellular phone. He denied knowledge of the controlled substances discovered in the spool of steel cable.

16. Based upon my experience and investigation in this case, there is probable cause to believe that SANCHEZ-RAMOS, as well as other persons currently unknown, were involved in an ongoing conspiracy to import and transport cocaine. Based on my experience investigating drug smugglers and traffickers, there is probable cause to believe

7

that SANCHEZ-RAMOS used the **Target Device** to coordinate with co-conspirators regarding the importation, transportation, and distribution of cocaine, and to otherwise further this conspiracy both inside and outside of the United States. There is also probable cause to believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device**, which may identify other persons involved in drug trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, there is probable cause to believe that information relevant to the drug smuggling and trafficking activities of SANCHEZ-RAMOS, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**. Therefore, for the reasons set forth above, I request permission to search the **Target Device** for items listed in Attachment B for the time period beginning December 30, ~~2019~~ 2018 ᴇʜ, up to and including March 30, 2019.

## METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones

8

do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, other law enforcement officers and I will subject the **Target Device** to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

20. Based on all of the facts and circumstances described above, there is probable cause to conclude that Sergio Pablo SANCHEZ-RAMOS used the **Target Device** to facilitate violations of Title 21, United States Code, Sections 952, 960, and 963.

21. Because the **Target Device** were promptly seized during the investigation of Sergio Pablo SANCHEZ-RAMOS's trafficking activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by Sergio Pablo SANCHEZ-RAMOS continues to exist on the **Target Device**. Based on the above facts and my training and experience, there is probable cause to believe that evidence of

violations of Title 21, United States Code, Sections 952 and 960 will be found on the **Target Device**.

22. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Elisha Mejia, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this ___10th___ day of May, 2019.

The Honorable RUTH BERMUDEZ MONTENEGRO
United States Magistrate Judge

10